Anna Y. Park, CA SBN 164242
Sue J. Noh, CA SBN 192134
Rumduol Vuong, CA SBN 264392
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 894-1083
Facsimile:  (213) 894-1301
E-Mail:  lado.legal@eeoc.gov

Nechole M. Garcia, NV SBN 12746
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
333 Las Vegas Boulevard South, Suite 8112
Las Vegas, NV 89101
Telephone: (702) 388-5072
Facsimile: (702) 388-5094
E-Mail: nechole.garcia@eeoc.gov

Eric Yau, HI SBN 10087
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850
Telephone: (808) 541-3133
Facsimile: (808) 541-3390
E-mail: eric.yau@eeoc.gov
Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NEVADA HEALTH CENTERS, INC., ULTRACARE LAS VEGAS and Does 1-5 Inclusive,<br><br>    Defendants. | Case No.: 2:16-cv-01495-JAD-PAL<br><br>**CONSENT DECREE RE:  DEFENDANT ULTRACARE LAS VEGAS; ORDER**<br><br>ECF No. 36 |

1

Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC") and Defendant Ultracare Las Vegas ("ULTRACARE" or "Defendant") hereby stipulate and agree to entry of this Consent Decree (the "Decree") to fully and finally resolve Plaintiff's complaint against ULTRACARE in *U.S. Equal Employment Opportunity Commission v. Nevada Health Centers, Inc., Ultracare Las Vegas. and Does 1-5, inclusive*; Case No. 2:16-cv-01495-JAD-PAL (the "Action").  On June 23, 2016, Plaintiff filed this Action in the United States District Court, District of Nevada, for violation of Title VII , *as amended*, 42 U.S.C. § 2000e *et. seq.*  The Action alleged that Defendants discriminated against Charging Party David Matlock on the basis of gender (male).

## II.

## PURPOSES AND SCOPE OF THE CONSENT DECREE

A.      The Decree is made and entered into by and between the EEOC and  Defendant and shall be binding on and enforceable against Defendant, as well as their officers, directors, agents, successors and assigns.  Collectively, the EEOC and ULTRACARE are referred to herein as the "Parties."

B.      The Parties have entered into this Decree for the following purposes:

1.      To provide appropriate monetary and injunctive relief;

2.      To ensure employment practices in compliance with federal law;

3.      To ensure a work environment free from retaliation;

4.      To ensure training in employment discrimination law; and

5.      To ensure appropriate recording keeping, reporting, and monitoring.

C.      This Decree, as described in further detail in Sections IX and X below will be implemented by Defendant on a company-wide basis.

## III.

## RELEASE OF CLAIMS

A.      This Decree fully and completely resolves all issues, claims and allegations raised by the EEOC against ULTRACARE in this Action.

B.      Nothing in this Decree shall be construed to limit or reduce ULTRACARE's obligation to comply fully with Title VII or any other federal employment statute.

C.     Nothing in this Decree shall be construed to preclude the EEOC from bringing suit to enforce this Decree in the event that any party fails to perform the promises and representations contained herein.

D.     This Decree in no way affects the EEOC's right to bring, process, investigate or litigate other charges that may be in existence or may later arise against ULTRACARE in accordance with standard EEOC procedures.

## IV.

## JURISDICTION

A.     The Court has jurisdiction over the Parties and the subject matter of this litigation.  The Action asserts claims that, if proven, would authorize the Court to grant the equitable relief set forth in this Decree.  The terms and provisions of this Decree are fair, reasonable and just.  This Decree conforms with the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights or privileges of any person.

B.     The Court shall retain jurisdiction of this action during the duration of the Decree for the purposes of entering all orders, judgments and decrees that may be necessary to implement the relief provided herein.

## V.

## EFFECTIVE DATE AND DURATION OF DECREE

A.     The provisions and agreements contained herein are effective immediately upon the date which this Decree is entered by the Court (the "Effective Date").

B.     Except as otherwise provided herein, this Decree shall remain in effect for five (5) years after the Effective Date.

## VI.

## MODIFICATION AND SEVERABILITY

A.     This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein.  No waiver, modification or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.

B.    If one or more provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments in order to effectuate the purposes of the Decree.  In any event, the remaining provisions will remain in full force and effect unless the purposes of the Decree cannot, despite the Parties' best efforts, be achieved.

C.    By mutual agreement of the Parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions herein.

## VII.

## COMPLIANCE AND DISPUTE RESOLUTION

A.    The Parties expressly agree that if the EEOC has reason to believe that ULTRACARE has failed to comply with any provision of this Consent Decree, the EEOC may bring an action before this Court to enforce the Decree.  Prior to initiating such action, the EEOC will notify ULTRACARE and/or its/their legal counsel of record, in writing, of the nature of the dispute.  This notice shall specify the particular provision(s) that the EEOC believes ULTRACARE breached.  Absent a showing by either party that the delay will cause irreparable harm, ULTRACARE shall have thirty (30) days to attempt to resolve or cure any non-monetary breach and shall have five (5) days to attempt to resolve or cure any monetary breach.

B.    The Parties agree to cooperate with each other and use their best efforts to resolve any dispute referenced in the EEOC notice.

C.    After thirty (30) days have passed with respect to any non-monetary breach, or five (5) days have passes with respect to any monetary breach, if the Parties have reached no resolution or agreement to extend the time further, the EEOC may petition this Court for resolution of the dispute, seeking all available relief, including an extension of the term of the Decree, the EEOC's costs and any attorneys' fees incurred in securing compliance with the Decree, and/or any other relief the court deems appropriate

## VIII.

## MONETARY RELIEF

A.    Defendant will pay a total of $15,000.00 to Charging Party David Matlock ("Mr. Matlock") in monetary relief to resolve this action.  The EEOC has full and complete discretion under

this Decree to determine the characterization of such payments as backpay or other damages as hereinafter described in this Decree.

B.     Payment of the $15,000.00 to Mr. Matlock shall consist of monthly payments in the amount of $3,000.00, with the first payment due five days after the effective date of this Decree, and the remaining payments due on the same day of each month thereafter.  The payment shall be made without any withholdings.  This settlement payment of $15,000 will be treated as compensatory damages and ULTRACARE shall issue Mr. Matlock a 1099 tax reporting form with the final payment installment.

C.     Within three (3) business days of the issuance of the payments, Defendant shall submit a copy of the check, tax reporting forms, and related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, 255 East Temple Street, 4th Floor, Los Angeles, CA, 90012.

D.     Ultracare's owner, Brian Harris, has provided the EEOC with a fully executed personal Guaranty in his individual capacity, a copy of which is attached hereto as Exhibit A.

## IX.

### GENERAL INJUNCTIVE RELIEF

A.     Non-Discrimination:

ULTRACARE, including all managerial and non-managerial employees, and all those in active concert or participation with them, are hereby enjoined from discriminating against persons on the basis of gender in hiring decisions, termination decisions, performance evaluations, transfers, demotions, promotions, or any terms and conditions of employment.

B.     Retaliation:

ULTRACARE, including all managerial and non-managerial employees, and all those in active concert or participation with them, or any of them, are hereby enjoined from implementing or permitting any action, policy or practice with the purpose of retaliating against any current or former employee or applicant of ULTRACARE, because he or she has in the past, or during the term of this Decree:

1.     Opposed any practice made unlawful under Title VII;

2.     Filed a charge of discrimination alleging such practice;

3.       Participated in any manner in an internal or external investigation or proceeding relating to this case or any claim of a violation of Title VII;

4.       Was identified as a possible witness or claimant in this action;

5.       Asserted any right under this Decree; or

6.       Sought and/or received any relief in accordance with this Decree.

## X.

## SPECIFIC INJUNCTIVE RELIEF

A.    Policies and Procedures

ULTRACARE, on a company-wide level, shall review, revise, distribute, and implement its policies and procedures against discrimination and retaliation prohibited by Title VII (the "Policy"). The Policy shall include:

1.       A clear explanation of prohibited conduct;

2.       Assurance that employees who make complaints of discrimination or who provide information related to such complaints are protected against retaliation;

3.       A clearly described complaint process for gender discrimination, harassment, and retaliation that provides accessible avenues of complaint against co-workers, including the complainant's supervisors, that allows for complaints to be initiated verbally, although it may require that the substance of the complaint be recorded later in writing;

4.       Assurance that ULTRACARE will protect the confidentiality of discrimination complaints to the extent possible from being disclosed to those who do not need to know;

5.       A complaint process that provides a prompt, thorough, and impartial investigation;

6.       A requirement that any employee in a supervisory position who receives a complaint of discrimination, whether formal or informal, written or verbal, report such complaint to the human resources department within 24 hours of receiving said complaint;

7.       Assurance that ULTRACARE's disciplinary policies hold employees, managers, supervisors and human resources accountable for failing to take appropriate action or for engaging in conduct prohibited under this Decree;

8.      A procedure for communicating with the complainant in writing regarding the status of the complaint / investigation, results of the investigation, and if any remedial action was taken;

9.      Assurance that ULTRACARE will take prompt and appropriate corrective action when it determines that discrimination and/or retaliation has occurred; and

10.     The Policy shall ensure and provide assurance that applicants and employees are provided equal employment opportunities in the terms and conditions of employment and gender is not a factor in the offer of any employment opportunities.

Within thirty (30) days of the Effective Date of this Decree, ULTRACARE shall provide to the EEOC a copy of the Policy.  Within sixty (60) days of the Effective Date, ULTRACARE shall ensure that it has distributed its Policy to each managerial and non-managerial employee.  Within sixty (60) days of the Effective Date, ULTRACARE shall submit to the Commission a statement confirming distribution of the Policy.  For each new managerial or non-managerial employee hired after the initial distribution of the Policy described above, ULTRACARE shall ensure that the new employee and/or manager receives the Policy within ten (10) days of employment.

B.     Training

1.     Within ninety (90) days of the Effective Date of this Decree, ULTRACARE shall provide training of at least two hour duration for the owner and any managerial employee, covering the Policy and federal laws regarding employment discrimination on the basis of gender, with an emphasis on recruitment, placement, discharge, and the specific challenges ULTRACARE faces as a staffing agency in assuring compliance with the Policy and federal law.  Once each year during the term of the Decree, ULTRACARE's owner and all managerial employees shall complete two hours of such training regarding the Policy and federal anti-discrimination law as described above to ensure compliance with the Decree.  Within thirty (30) days of each training, ULTRACARE shall submit to the EEOC written confirmation that the training occurred and the names of the attendees.

C.     Record Keeping

ULTRACARE shall establish a record-keeping procedure that provides for the centralized tracking of all applications for employment and documents generated in connection with any application for employment and decisions pertaining to each application for employment; employment decisions

affecting the terms and conditions of employment or each employee and/or applicant including but not limited to discipline and terminations; discrimination complaints; and the monitoring of such complaints to prevent discrimination.  The records to be maintained for the duration of this Decree shall include:

1.      All documents reflecting a job opening;

2.      All applications for employment;

3.      All documents generated in response to an application for employment, including but not limited to emails, notes, and reference checks;

4.      All documents pertaining to placement of an employee for work for ULTRACARE or any of ULTRACARE's clients and/or contractors;

5.      All documents and communications such as notes or emails pertaining to an applicant's and/or employee's qualification and/or job performance;

6.      All documents and communication pertaining to any discipline or counseling of an employee;

7.      All documents generated in connection with any complaint, investigation into, or resolution of every complaint of gender discrimination or retaliation for the duration of the Decree and the identities of the parties involved;

8.      All forms acknowledging any employee or manager's receipt of the Policy as required under this Decree;

9.      All documents verifying the occurrence of all training sessions and names and positions of all attendees for each session as required under this Decree;

10.      All documents generated in connection with the monitoring, counseling, or disciplining of employees whom Defendant determined to have engaged in behavior that may be discriminatory or retaliatory; and

11.      All documents generated in connection with Defendant's confidential follow-up inquiries into whether any complainant believes he or she has been retaliated against.

Defendant will make the aforementioned records available to the EEOC within ten business days following a written request by the EEOC.

D.    Posting

Within ten (10) business days after the Effective Date and throughout the term of this Decree, ULTRACARE shall post the notice attached to the Decree as Exhibit B, in a clearly visible location frequented by employees at any ULTRACARE location within the state of Nevada during the term of this Decree.  The notice shall remain posted for the duration of the decree.

E.    Reporting

Within 90 days of the Effective Date ULTRACARE shall provide a report which includes the following and thereafter ULTRACARE shall provide an annual report on or before each anniversary of the Effective Date:

1.    A copy of ULTRACARE's Policy against gender discrimination and retaliation if any revisions were made since the Policy implemented pursuant to this Decree.

2.    The attendance lists of all attendees for the EEOC training session required under this Decree that took place during the previous twelve months;

3.    Confirmation that the Notice Posting requirement as set forth in Section D is in full compliance throughout the duration of the Decree.

4.    A summary of non-discriminatory hiring as exemplified by the spreadsheet attached hereto as Exhibit C, and a copy of any job announcements for ultrasound technician positions, applications, resumes submitted and other materials submitted for open ultrasound technician positions, names and genders of individuals selected for open ultrasound technician positions, a short summary of where the selected ultrasound technicians were placed, the rate of pay and/or benefits, and number of hours offered for work.

5.    If ULTRACARE, and/or an employer decides to bar employment of an ultrasound technician or terminates an ultrasound technician because of gender, and/or if ULTRACARE receives a request that an ultrasound technician be barred  or terminated based on gender, ULTRACARE shall provide all information, documents, and communications related to the request and decision-making process.

6.   A summary of all gender discrimination and/or retaliation complaints made since the submission of the immediately preceding report hereunder as exemplified by the spreadsheet attached hereto as Exhibit D, that includes the following for each complaint during the reporting period:

(a)   the name and title of the complaining party(ies);

(b)   the date of the complaint;

(c)   the name and title of the alleged offender(s);

(d)   the name and title of the person(s) who conducted the investigation into the complaint;

(e)   the nature of the complaint (i.e. comments, acts, etc.);

(f)   the date of the commencement and completion of the investigation;

(g)   a brief description of the investigation (i.e. number of persons interviewed, materials reviewed);

(h)   the outcome of the investigation and any action taken;.

(i)   whether previous gender discrimination or retaliation complaints had been made regarding the alleged harasser(s)/offender(s).  If so, the report should also include the outcome of the prior investigations; and

(j)   a copy of all documents and communications pertaining to the complaints and investigations.

## XI.

## COSTS OF ADMINISTRATION AND IMPLEMENTATION

## OF CONSENT DECREE

ULTRACARE shall bear all costs associated with its administration and implementation of its obligations under this Consent Decree.

## XII.

## COSTS AND ATTORNEYS' FEES

Each party shall bear its own costs of suit and attorneys' fees.

## XIII.

### MISCELLANEOUS PROVISIONS

A.      During the term of this Consent Decree, ULTRACARE shall provide any potential successor-in-interest with a copy of this Consent Decree within a reasonable time of not less than thirty (30) days prior to the execution of any agreement for acquisition or assumption of control of any or all of ULTRACARE's facilities, or any other material change in corporate structure, and shall simultaneously inform the EEOC of same.

B.      During the term of this Consent Decree, ULTRACARE shall assure that each of its officers, managers and supervisors is aware of any term(s) of this Decree which may be related to his/her job duties.

C.      Unless otherwise stated, all notices, reports and correspondence required under this Decree shall be delivered to the attention of Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, CA, 90012; facsimile number (213) 894-1301.

D.      The Parties agree to entry of this Decree and judgment subject to final approval by the Court.

All parties, through the undersigned, respectfully apply for and consent to this entry of this Consent Decree Order.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Date: _____3/6/17_____

By:   Anna Y. Park, Regional Attorney
      Attorneys for Plaintiff EEOC

ULTRACARE LAS VEGAS

Date: _____

By:   Brian Harris, Chief Executive Officer

ULTRACARE LAS VEGAS

11

Date: _____

By: Donald Green, Esq.
      Attorney for Defendant Ultracare Las Vegas

**ORDER**

The provisions of the foregoing Consent Decree are hereby approved and compliance with all provisions thereof is HEREBY ORDERED.

Date: _____3/20/17_____

The Honorable Jennifer A. Dorsey
United States District Court Judge

### Exhibit A to Consent Decree

### GUARANTY

**GUARANTY** dated _____ 2017, made by the undersigned individual, Brian Harris, (the "Guarantor") in favor of the United States Equal Employment Opportunity Commission ("EEOC").

**PRELIMINARY STATEMENTS**:  In consideration of, and as an inducement to the EEOC, to agree to the Consent Decree with Defendant Ultracare Las Vegas, Inc. in *EEOC v. Nevada Health Center, Inc., Ultracare Las Vegas, et al.,* Civil Case Number 2:13-CV-01495-JAD-PAL, filed with the United States District Court, District of Nevada, (the "Consent Decree"), the undersigned Guarantor, hereby guarantees the full and prompt payment of all sums now owing or which may in the future be owing pursuant to the Consent Decree, when the same are due and payable.  The Guarantor owns a substantial amount of the stock or other ownership interests of Defendant Ultracare Las Vegas, Inc. (the "Company") and is financially interested in the Company's affairs.

**THEREFORE**, in in order to induce the EEOC to agree to the Consent Decree, the Guarantor agrees as follows:

Section 1.  **Guaranty of Payment.**  The Guarantor absolutely, unconditionally, and irrevocably guarantees to the EEOC the full and prompt payment of all sums now owing or which may in the future be owing pursuant to the Consent Decree, when the same are due and payable, and whether for the sums, any taxes associated with the sums, interest, fees, expenses, costs, and expenses which shall at any time be recoverable by the EEOC from Company by virtue of the Consent Decree and any amendments, modifications and other instruments relating thereto (hereinafter call "Liability" or "Liabilities" as the context may require).  The Liabilities include, without limitation, interest accruing after the commencement of a proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided by 28 U.S.C. § 1961.  This Guaranty is a guaranty of payment and not of collection only.  Guarantor further waives any right to require that any action be brought against Company or any other person or entity.  Successive recoveries may be had hereunder. No invalidity, irregularity or unenforceability of all or any part of the Consent Decree shall affect, impair or be a defense to this Guaranty and this Guaranty shall constitute a primary obligation of the undersigned.  The EEOC shall not be required to exhaust any right or remedy or take any action against Company or any other person or entity or any collateral.  The Guarantor agrees that, as between the Guarantor and the EEOC, the Liabilities may be declared to be due and payable for the purposes of the Guaranty notwithstanding any stay, injunction, or other prohibition which may prevent, delay, or vitiate any declaration as regards the Company and that in the event of a declaration or attempted declaration, the Liabilities shall immediately become due and payable by the Guarantor for the purposes of this Guaranty.  If any amount shall be paid to Guarantor by

Company on account of any claim set forth at any time when all the Liabilities of Company shall not have been paid in full, such amount shall be held in trust by Guarantor of the EEOC's benefit and, to the extent of any matured and unpaid Liabilities of Company to the EEOC under the Consent Decree, shall be immediately tendered pursuant to the Consent Decree.

Section 2. **Guaranty Absolute.** The Guarantor guarantees that the Liabilities shall be paid strictly in accordance with the terms of the Consent Decree. The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any changes in the time, manner or place of payment of, or in any other terms of, the Consent Decree, or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of the Consent Decree or Liability, including any increase or decrease in the rate of interest thereon; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release, or non-perfection of any collateral, for all or any of the Consent Decree; (c) any present or future law, regulation, or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of the Consent Decree or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of the Consent Decree; and (e) any other setoff, defense, or counterclaim whatsoever (in any case, whether based on contract, tort or any other theory) with respect to the Consent Decree or the payment of sums contemplated thereby which might constitute a legal or equitable defense available to, or discharge of, the Company or the Guarantor.

Guarantor unconditionally and irrevocably waives any or all of the following: (1) Guarantor's rights of subrogation, reimbursement, indemnification, contribution, exoneration, and/or any other rights and defenses; and (2) any rights or defenses the Guarantor may have in respect of his or her obligations as a guarantor by reason of any election of remedies by the EEOC; and (3) any rights or defenses the Guarantor may have because the obligation is secured by real property or an estate for years. Nothing herein contained is intended or shall be construed to give Guarantor any rights of subrogation or right to participate in any way in the EEOC's right, title, or interest in the Consent Decree, notwithstanding any payments made by Guarantor to or toward any payments dues from Guarantor under this Guaranty, all such rights of subrogation and participation being hereby expressly waived and released.

Section 3. **Guaranty Irrevocable.** This Guaranty is a continuing guaranty of the payment of all Liabilities now or hereafter existing under the Consent Decree and shall remain in full force and effect until payment in full of all Liabilities and other amounts payable under this Guaranty and under the Consent Decree are no longer in effect.

Each reference herein to Guarantor shall be deemed to include the heirs, distributes, and executors, administrators, and/or legal representatives of Guarantor's estate, all of whom shall be bound by the provisions of this Guaranty.

Section 4. **Reinstatement.**  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time, any payment of any of the Liabilities is rescinded or must otherwise be returned by the EEOC on the insolvency, bankruptcy, or reorganization of the Company or otherwise, all as though the payment had not been made.

Section 5. **Subrogation.**  The Guarantor shall not exercise any rights which it may acquire by way of subrogation, by any payment made under this Guaranty or otherwise, until all the Liabilities have been paid in full and the Consent Decree is no longer in effect.  If any amount is paid to the Guarantor on account of subrogation rights under this Guaranty at any time when all the Liabilities have not been paid in full, the amount shall be held in trust for the benefit of the EEOC and shall be promptly paid to the EEOC to be credited and applied to the Liabilities.

Section 6. **Subordination.**  Without limiting the EEOC's rights under any other agreement, any other liabilities owed by the Company to the Guarantor, are hereby subordinated to the Liabilities, and such other liabilities of the Company to the Guarantor, if the EEOC so requests, shall be collected, enforced, and received by the Guarantor as trustee for the EEOC and shall be paid on account of the Liabilities but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 7. **Certain Taxes.**  The Guarantor further agrees that all payments to be made hereunder shall be made without setoff or counterclaim and free and clear of, and without deduction for, any taxes, levies, imposts, duties, charges, fees, deductions, withholdings, or restrictions or conditions of any nature whatsoever now or hereafter imposed, levied, collected, withheld, or assessed by any political subdivision or taxing authority thereof or therein ("Taxes").  If any Taxes are required to be withheld from the sums payable under the terms of the Consent Decree and/or hereunder,  the amounts so pay shall be increased to the extent necessary to yield the amounts payable under the terms of the Consent Decree and hereunder in the full amount so to be paid.  Whenever any Tax is paid by the Guarantor, as promptly as possible thereafter, the Guarantor shall send the EEOC an official receipt showing payment thereof, together with such additional documentary evidence as may be requested by the EEOC.

Section 8. **Representations and Warranties.**  The Guarantor represents and warrants that:  (a) this Guaranty (i) has been authorized by all necessary actions; (ii) does not violate any agreement, instrument, law, regulation or order applicable to the Guarantor; (iii) does not require the consent or approval of any person or entity, including but not limited to any governmental authority, or any filing or registration of any kind; and (iv) is the legal, valid and binding obligation of the Guarantor enforceable against the Guarantor in accordance with its terms, except to the extent that enforcement may be limited by applicable bankruptcy, insolvency, or other similar laws affecting creditors' rights generally; and (b) in executing and delivering this Guaranty, the Guarantor has (i) made an independent investigation of the transactions

contemplated hereby and the Company, the Company's business, assets, operations, prospects and conditions, financial or otherwise, and any circumstances which may bear upon such transactions, the Company or obligations and risks undertaken herein with respect to the Liabilities; (ii) adequate means to obtain from the Company on a continuing basis information concerning the Company; (iii) has full and complete access to the Consent Decree; and (iv) not relied and will not reply upon any representations or warranties about the Consent Decree.

Section 9. **Remedies Generally.** The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law. All of EEOC's rights and remedies under the Consent Decree or under this Guaranty are intended to be distinct, separate and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others.

Section 10. **Formalities.** The Guarantor waives presentment and demand for payment, notice of dishonor, protest, notice of acceptance of this Guaranty or incurrence of any Liability, any other formality with respect to any of the Liabilities or this Guaranty, all other notice to which Guarantor might otherwise be entitled, any law requiring EEOC to institute an action against any other party (including, without limitation, Company) in order to institute an action or obtain a judgment against Guarantor, as well as any suretyship laws, and any demand for payment under this Guaranty; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion or the failure to assert by EEOC against Company, or Company's successors and assigns, of any of the rights or remedies reserved to EEOC pursuant to provisions of the Consent Decree.

Section 11. **Amendment and Waivers.** No delay on the part of EEOC in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on Guarantor shall be deemed to be a waiver of the obligation of Guarantor or of the right of EEOC to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty nor any termination hereof be effective unless in writing signed by EEOC, and then the waiver or consent shall be effective only in the specific instance and of the specific purpose for which given.

Section 12. **Expenses.** The Guarantor shall reimburse the EEOC on demand for all costs, expenses and charges (including without limitation fees and charges of external legal counsel for the EEOC and costs allocated by its internal legal staff) incurred by the EEOC in connection with the preparation, performance, or enforcement of this Guaranty.

Section 13. **Assignment.** This Guaranty shall be binding on, and shall inure to the benefit of the Guarantor, the EEOC, and their respective successors and assigns; provided that the Guarantor may not assign or transfer its rights or obligations under this Guaranty.

Section 14.  **Captions.**  The headings and captions in this Guaranty are for convenience only and shall not affect the interpretation or construction of this Guaranty.

Section 15.  **Governing Law, Jurisdiction, Etc.**  This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Nevada. The Guarantor consents to the nonexclusive jurisdiction and venue of the federal courts located in the cities of Las Vegas or Los Angeles.  Service by process by the EEOC in connection with any such dispute shall be binding on the Guarantor if sent to the Guarantor by registered mail at the address specified below or as other address specified by the Guarantor from time to time.  The Guarantor waives any right the Guarantor may have to jury trial in any action related to this Guaranty or  the transactions contemplated hereby and further waives any right to interpose any counterclaim related to this Guaranty or the transactions contemplated hereby in any such action. To the extent that the Guarantor has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether from service or notice, attachment prior to judgment, attachment in aid of execution of a judgment, execution or otherwise), the Guarantor hereby irrevocably waives such immunity in respect of its obligations under this Guaranty.

Section 18.  **Integration; Effectiveness.**  This Guaranty alone sets forth the entire understanding of the Guarantor  and the EEOC relating to the guarantee of the Liabilities and constitutes the entire contract between the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Guaranty shall become effective when it shall have been executed and delivered by the Guarantor to the EEOC.  Delivery of an executed signature page of this Guaranty by telecopy shall be effective as delivery of a manually executed signature page of this Guaranty.

///

///

///

///

///

///

///

///

///

Section 17.  **Counterparts.**   This Guaranty may be executed in one or more counterparts, each of which counterparts shall be an original.

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed and delivered as of the date first above written.

GUARANTOR:

BRIAN HARRIS, an individual

Date:

Address for Notice:

10112 Royal Mint Ave

Los Vegas, NV

89166

STATE OF NEVADA              )
                             ) ss.
COUNTY OF CLARK              )

On the _1st_ day of _March_____, 2017, before me personally came BRIAN HARRIS, who executed the foregoing instrument and acknowledged that he executed the same.

WITNESS my hand and official seal.

Vicki Figueroa

Vicki Figueroa

Notary Public

My Commission Expires on: Sept 15, 2019

VICKI FIGUEROA
Notary Public - State of Nevada
County of Clark
APPT. NO. 99-59352-1
My App. Expires Sept. 15, 2019

Exhibit B to Consent Decree



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Las Vegas Local Office

## NOTICE OF CONSENT DECREE

This Notice is being posted pursuant to a Consent Decree entered by the Federal Court in the case of U.S. Equal Employment Opportunity Commission v. Nevada Health Centers, Inc., Ultracare Las Vegas, and Does 1-5, inclusive; Case No. 2:16-cv-01495-JAD-PAL, settling a lawsuit filed by the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC is a government agency that enforces federal anti-discrimination laws in the workplace. In June 2016, the EEOC filed a lawsuit in the United States District Court against Ultracare Las Vegas ("Ultracare") alleging that Ultracare discriminated against Charging Party David Matlock on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). The EEOC and Ultracare have entered into a Court approved Consent Deree to provide monetary relief for Mr. Matlock and injuctive relief in the public interest to resolve the lawsuit.

To resolve this lawsuit, Ultracare has agreed to implement a policy against discrimination that provides for a complaint procedure, to provide training to hiring officials, to maintain the records relevant to its hiring decisions to ensure that applicants receive an equal opportunity to compete for open position, and to maintain records and report to the EEOC regarding its hiring decision and if it receives any complaints regarding employment discrimination and/or retaliation.

Federal anti-discrimination law prohibits harassment or discrimination against any employee or applicant for employment because of a person's age, disability, race, sex, color, religion or national origin and further prohibits retaliation against any employee who complains about discrimination, files a charge of discrimination, or participates, gives testimony, or assists in any investigation regarding discrimination.

Ultracare is committed to complying with federal anti-discrimination laws in all respects, including preventing and remedying gender discrimination and retaliation. Ultracare will not tolerate discrimination against employees on the basis of that person's sex, race, national origin, color, religion, disability, and age, and prohibits retaliation against any employee who complains about discrimination, files a charge of discrimination, or participates, gives testimony, or assists in any investigation regarding discrimination.

If you believe that you have been discriminated against because of your sex, national origin, age, race, color, religion, or disability, or retaliated against, you may seek assistance from:

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

333 Las Vegas Blvd. South, Suite 8112
Las Vegas, NV  89101
1-800-669-4000

<u>**JOB TITLE OF OPENING & DATES POSTED:**</u>
<u>**NAME & GENDER OF SELECTED APPLICANT:**</u>

**NAME OF EACH APPLICANT SUBMITTED MATERIALS**

**APPLICATIONS AND OTHER**

1. Last Name, First Name

2. ...

**EXHIBIT C - APPLICANT/PLACEMENT REPORTING**

## EXHIBIT D - DISCRIMINATION INVESTIGATION REPORTING

| NAMES/JOB TITLE OF COMPLAINANT | COMPLAINT DATE | NAME/TITLE OF ALLEGED OFFENDERS | NAME/TITLE OF INVESTIGATOR | NATURE OF COMPLAINT | INVESTIGATION COMMENCEMENT / COMPLETION DATE | INVESTIGATION DESCRIPTION | INVESTIGATION OUTCOME | PREVIOUS GENDER DISCRIMINATION / RETALIATION COMPLAINTS AGAINST THIS ALLEGED OFFENDER (Y/N) | ANY PRIOR COMPLAINT BY THIS COMPLAINANT (Y/N) |
|---|---|---|---|---|---|---|---|---|---|